**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **YAAKOV GLUCK and SETH GLUCK,** individually, and on behalf of all others similarly situated customers,<br><br>    Plaintiffs,<br><br>     v.<br><br>**FIDELITY INVESTMENTS a/k/a FMR, LLC**,<br><br>    Defendants. | Case No.: 1:24-cv-12601-LTS |
| **PEGGIE LITTLE**, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>     v.<br><br>**FIDELITY INVESTMENTS a/k/a FIDELITY MANAGEMENT & RESEARCH (FMR)**,<br><br>    Defendants. | Case No.: 1:24-cv-12625-DJC |
| **BRITTON BRYANT**, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>     v.<br><br>**FIDELITY INVESTMENTS a/k/a FIDELITY BROKERAGE SERVICES, LLC**,<br><br>    Defendants. | Case No.: 1:24-cv-12653-DJC |

**RATIEK LOWERY**, individually and on behalf of all others similarly situated,

    Plaintiff,

     v.

**FIDELITY INVESTMENTS a/k/a FIDELITY MANAGEMENT & RESEARCH (FMR)**,

    Defendants.

Case No.: 1:24-cv-12669-LTS

**PLAINTIFFS' MOTION TO CONSOLIDATE CASES AND APPOINT INTERIM CLASS COUNSEL AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiffs Yaakov Gluck, Seth Gluck, Peggie Little, Britton Bryant, and Ratiek Lowery (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated (the "Class" or "Class Members"), respectfully move for: (i) consolidation of the above-captioned cases (the "Related Actions") for both pre-trial and trial purposes pursuant to Federal Rule of Civil Procedure 42(a) and Local Rule 40.1(k); and (ii) appointment of Lori G. Feldman of George Feldman McDonald, PLLC and A. Brooke Murphy of Murphy Law Firm as Interim Lead Counsel ("Interim Lead Counsel"), appointment of Srourian Law Firm, P.C. and Zemel Law LLC as Executive Committee Firms, and appointment of Siri Glimstad LLP as Interim Liaison Counsel (collectively, the appointments are referred to as "Interim Class Counsel"). For the reasons set forth below, Plaintiffs' Motion to Consolidate Cases and Appoint Interim Class Counsel should be granted.

## I.    INTRODUCTION

Plaintiffs seek to hold Fidelity Investments[1] (collectively, "Fidelity" or "Defendants") liable for their unlawful disclosure of the highly sensitive personally identifiable information ("PII") of approximately 77,000 individuals in a massive and preventable data breach. As a result of Defendants' failure to keep Plaintiffs' and Class Members' PII secure and confidential, multiple class action lawsuits were filed against Defendants in the United States District Court for the District of Massachusetts. The Related Actions present numerous common issues of law and fact. Accordingly, these actions are ripe for consolidation and establishment of a leadership structure.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Parties

Fidelity is one of the largest investment firms in the United States. Dkt. No. 1 ("Bryant Compl."), ¶ 5. As part of Defendants' business, Defendants maintain the highly sensitive PII of

---

[1] Each of the Plaintiffs named Fidelity Investments as the Defendant, but with differing alternative names for the same corporate entity.

thousands of individuals. Plaintiffs and the Class are current and/or former customers of Fidelity. Bryant Compl., ¶ 8. In order to receive services, Plaintiffs were required to give their PII to Defendants. *Id.*

### B.    The Data Breach

Between August 17, 2024, and August 19, 2024, an unknown third-party breached its IT system "using two customer accounts they had recently established" enabling that party or entity to access the PII of over 77,000 Class Members (the "Data Breach" or "Breach"). *Id.*, ¶ 13. Despite knowing of the Fidelity Data Breach incident as early as August 19, 2024, and despite its obligations to provide adequate and timely notice so that affected persons can take precautions and mitigate potential losses and damages, Fidelity belatedly filed notices with several states' attorney general offices regarding the Fidelity Data Breach on October 9, 2024, almost two months after the breach. *Id.*, ¶ 16. Fidelity did not provide any notice to Plaintiff or Class Members at any time prior to October 9, 2024. *Id.*, ¶ 17.

### C.    Procedural History

Fidelity began notifying affected individuals of the Data Breach by mail on or about October 9, 2024, when Fidelity filed a sample breach notice with the Office of the Maine Attorney General. In the weeks following, several class actions lawsuits were filed against Fidelity, each seeking to redress the harms caused by the Data Breach. All of the actions filed focus on the same factual predicate—the Data Breach—and assert nearly identical claims for relief.

On October 10, 2024, Plaintiffs Yaakov Gluck and Seth Gluck filed a class action lawsuit against Defendants in this Court in the case *Gluck, et. al. v Fidelity Investments,* No. 1:24-CV-12601. Plaintiffs Gluck asserts claims for: (i) negligence; (ii) negligence per se; and (iii) invasion of privacy.

On October 15, 2024, Plaintiff Peggie Little filed her class action lawsuit against Defendants in this Court in the case *Little v. Fidelity Investments, et al.,* No. 1:24-CV-12625. Plaintiff Little asserts claims for: (i) negligence; (ii) breach of implied contract; and (iii) unjust enrichment.

On October 18, 2024, Plaintiff Britton Bryant filed his class action lawsuit against Defendants in this Court in the case *Bryant v Fidelity Investments,* No. 1:24-CV-12653. Plaintiff Bryant asserts claims for: (i) negligence; (ii) negligence per se; (iii) breach of implied contract; (iv) breach of implied covenant of good faith and fair dealing (v) negligent misrepresentation; (vi) invasion of privacy; (vii) breach of fiduciary duty; and (viii) unjust enrichment.

On October 21, 2023, Plaintiff Ratiek Lowery filed his class action lawsuit against Defendants in this Court in the case *Lowery v. Fidelity Investments,* No. 1:24-CV-12669. Plaintiff Lowery asserts claims for: (i) negligence; (ii) negligence *per* se; (iii) breach of confidence; (iv) breach of implied contract; (v) breach of the implied covenant of good faith and fair dealing (vi) breach of fiduciary duty; (vii) unjust enrichment; and (viii) declaratory judgement.

## III.    THE ACTIONS SHOULD BE CONSOLIDATED BEFORE THIS COURT

The Actions before this Court are nearly identical; thus, consolidation is appropriate. Each lawsuit arises from the same common set of operative facts—the Data Breach. Due to each Plaintiffs' reliance on the same set of operative facts, all Plaintiffs assert overlapping claims, on behalf of similarly defined classes, seeking similar relief. The above-captioned cases, the parties thereto, and the Court will be best served in a consolidated proceeding.

### A.    Legal Standards

Federal Rule of Civil Procedure 42 provides that if actions before the Court "involve a common question of law *or* fact" the Court may "consolidate the actions." Fed. R. Civ. P. 42(a)(2)

(emphasis added). The threshold issue in determining whether actions should be consolidated is whether the proceedings "involve a common party and common issues of fact or law." *Seguro de Servicio de Salud v. McAuto Sys. Grp.*, 878 F.2d 5, 8 (1st Cir. 1989). The facts and issues of law in the actions need not be identical. *See Cruickshank v. Clean Seas Co.*, 402 F. Supp. 2d 328, 341, *report and recommendation adopted by* 402 F. Supp. 2d 328 (D. Mass. 2005). Once that threshold is met, the Court has "broad discretion in weighing the costs and benefits of consolidation to decide whether that procedure is appropriate." *Seguro*, 878 F.2d at 8.

In considering the costs and benefits of consolidation, the Court should consider "the convenience or inconvenience to the parties, the judicial economy, the savings in time, effort or expense and any confusion, delay or prejudice that might result from consolidation." *Cruickshank*, 402 F. Supp. 2d at 341 (quoting *Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 102 (D. Mass. 1995)). "A motion for consolidation will usually be granted unless the party opposing it can show 'demonstrable prejudice.'" *Seguro*, 878 F.2d at 8 (citation omitted); *see, e.g., Storlazzi v. Bakey*, 1995 U.S. App. LEXIS 30146, at *4–5 (1st Cir. Oct. 24, 1995) (consolidation of three actions appropriate where cases involved common questions of law and fact and there was no prejudice to parties); *Cruickshank*, 402 F. Supp. 2d at 340–42 (consolidation ordered where separate actions involved common parties, overlapping legal issues, and "nearly identical facts").

**B.     Argument and Authorities**

Consolidation is appropriate here because the Related Actions are substantively identical and are in the same stage of litigation.  All of the actions focus on one factual event—Defendants' Data Breach—which was a result of Defendants' failure to protect Plaintiffs and Class Members' PII.  Each action alleges the same factual contentions, *i.e.*,: (i) Defendants knowingly violated its obligations to abide by best practices and industry standards in protecting its customers' PII; (ii)

these failures enabled an unauthorized third party to intercept, access, and acquire the PII Defendants collected and maintained, putting Class members' PII at a serious and ongoing risk; and (iii) Defendants failed to disclose the full extent of the Data Breach and notify the affected customers in a timely manner. These factual allegations are the gravamen of each of the filed actions, thus numerous common questions of fact exist. Furthermore, each action: (i) is brought as a putative class action seeking to certify the same class of individuals; (ii) alleges many of the same claims, including for negligence, breach of implied contract, and unjust enrichment; and (iii) arises out of the same occurrence that inflicted the same alleged injuries on the Plaintiffs, namely an injurious exposure of PII as a result of a cyberattack on Fidelity that was discovered on August 19, 2024.

Courts consistently find that data breach class actions are particularly appropriate for Rule 42 consolidation. *See, e.g.*, *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc*., No. 17-cv-1102-WJM-STV, 2017 U.S. Dist. LEXIS 142626, at *3 (D. Colo. Sep. 1, 2017) ("[B]oth actions are substantively identical and are in the same stage of litigation . . . arise out of the same occurrence: a data breach . . . ."); *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 745 (W.D.N.Y. 2017) (noting court had previously "issued an order consolidating . . . pursuant to Federal Rule of Civil Procedure 42(a)(2), and transferred the case" to one judge in large data breach litigation); *First Choice Federal Credit Union v. The Wendy's Co., et al.*, No. 2:16-cv-506, ECF No. 20 (W.D. Pa. July 12, 2016) (consolidating five actions arising out of a data breach); *Greater Chautauqua Federal Credit Union v. Kmart Corp. et al.*, No. 1:15-cv-02228, ECF No. 44 (N.D. Ill.) (consolidating related data beach cases).

Consolidation of the Related Actions (and any future similar actions alleging claims relating to the Data Breach) is warranted because it will simplify discovery, pretrial motions, class

certification issues, and other case management issues, especially given that the cases are at their procedural inception. Consolidating the Related Actions will also reduce the confusion and delay that may result from prosecuting related putative class actions separately, including eliminating duplicative discovery and the possibility of inconsistent rulings on class certification, *Daubert* motions, and other pretrial matters. Thus, consolidation will foster judicial economy.

There is no potential prejudice to the parties if the four lawsuits are consolidated. To the contrary, since the four cases involve common questions of law and fact, consolidation will prevent inconsistent verdicts.

Accordingly, Plaintiffs respectfully request that the Court consolidate the Related Actions, and any subsequently filed or transferred actions relating to the Data Breach, under the docket number of the first filed case, No. 1:24-CV-12601, and under the caption "*In re Fidelity Investments Data Breach Litigation*."

## IV.    THE PROPOSED LEADERSHIP STRUCTURE SHOULD BE APPOINTED

To avoid inefficiency, duplication, and possible prejudice to Plaintiffs and Class Members, and consistent with the interests of justice, the Manual for Complex Litigation recommends that courts in complex litigation should "institute procedures under which one or more attorneys are selected and authorized to act on behalf of other counsel and their clients." Manual for Complex Litigation (Fourth) ("MCL" or "Manual"), § 10.22.  In some cases, "the attorneys coordinate their activities without the court's assistance, and such effort should be encouraged." *Id*. Such are the circumstances here: the undersigned counsel have organized themselves and begun coordinated prosecution of this litigation on behalf of Plaintiffs.

### A.    Legal Standards

Federal Rule of Civil Procedure 23(g)(3) permits the appointment of Interim Lead Counsel "to act on behalf of putative class members before determining whether to certify the action as a class action."  Fed. R. Civ. P. 23(g)(3). Designating Interim Class Counsel now ensures the protection of the interests of the Class in making and responding to motions, conducting discovery, and negotiating possible settlements.  *See Roe v. Arch Coal, Inc.*, No. 4:15-cv-910, 2015 WL 6702288, at *3 (E.D. Mo. Nov. 2, 2015) (finding it in the best interests of the class to appoint Interim Class Counsel even when no other counsel competed for appointment); *Syzmczak v. Nissan N. Am., Inc.*, Nos. 10 CV 7493(VB), 12 CV 2149(VB), 2012 WL 1877306, at *1 (S.D.N.Y. May 15, 2012) (citing *Manual for Complex Litig*. § 21.11 (4th ed. 2004)).

Determining the appointment of Interim Lead Counsel requires the court to consider counsel's: (i) work in identifying and investigating potential claims; (ii) experience in handling class action and complex litigation and the types of claims asserted in the action; (iii) knowledge of the applicable law; and (iv) available resources.  Fed. R. Civ. P. 23(g)(1)(A).  The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  The purpose of this Court's review is to ensure that counsel appointed to leading roles are "qualified and responsible, that they will fairly and adequately represent all parties on their side, and that their charges will be reasonable."  *Manual for Complex Litig*. § 10.22.  The ultimate goal is "achieving efficiency and economy without jeopardizing fairness to parties."  *Id.* § 10.221; *see also Cappello v. Franciscan All., Inc.*, No. 3:16-CV-290-TLS-MGG, 2017 WL 781609, at *3 (N.D. Ind. Feb. 28, 2017).  Ultimately, no single factor is determinative; instead, a court should appoint counsel after evaluating all relevant

7

considerations and comparing the relative strengths of counsel.  *See* Fed. R. Civ. P. 23(g)(1)(A)-(B).

### B.    Argument and Authorities

Proposed Interim Class Counsel satisfy the factors considered by the Court for appointment under Fed. R. Civ. P. 23(g)(3).  Proposed Interim Class Counsel have successfully litigated numerous class actions involving data breaches and privacy claims on behalf of millions of consumers.  Additionally, Proposed Interim Class Counsel possess the necessary resources to prosecute this litigation, have the support of the Plaintiffs from all cases on file, are working together collectively already, and will continue to work in this fashion to manage this litigation effectively and efficiently.  Because Proposed Interim Class Counsel have the case-management and complex litigation skills, experience, knowledge of the relevant facts and legal issues, and extensive resources needed to efficiently prosecute this action, the Court should grant Plaintiffs' motion.

### 1.    Proposed Class Counsel Have Performed Substantial Work Investigating and Litigating the Claims to Date

Proposed Interim Class Counsel have been diligent in investigating and advancing this case. Among other things, they have investigated the circumstances surrounding the Data Breach and have communicated with affected class members, including, but not limited to, the following: (i) investigating the facts surrounding the Data Breach; (ii) interviewing numerous consumers injured by the Data Breach; (iii) researching legal claims; (iv) drafting initial pleadings; and (v) organizing Plaintiffs and counsel to work toward unified proceedings.

The Data Breach at issue is egregious in terms of the information exposed and the scope of victims affected. Accordingly, Proposed Interim Class Counsel worked to quickly organize and avoid any delay that could be caused by a leadership dispute to address the merits of the case as

expeditiously as possible. Work assignments have been, and will continue to be, allocated fairly and in a manner that takes advantage of the strengths of each firm while eliminating any duplicity.

Proposed Interim Class Counsel operate as a cohesive, well-organized group. Going forward, and if appointed, Proposed Interim Class Counsel will establish a standardized protocol for managing and reporting time and expenses incurred. Accordingly, the substantial work and investigation to date weigh in favor of appointing Proposed Interim Class Counsel under Fed. R. Civ. P. 23(g)(3).

### 2. Proposed Interim Class Counsel Possess the Necessary Experience and Skill to Prosecute This Action

Proposed Interim Class Counsel are well-qualified to lead this case. Each member has a track record of successfully litigating and resolving consumer class actions, particularly data breach class actions. *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) (stating that the "most persuasive" factors in choosing lead counsel may be proposed counsel's "experience in, and knowledge of, the applicable law in this field").

Plaintiffs request that the Court designate Lori G. Feldman of George Feldman McDonald, PLLC and A. Brooke Murphy of Murphy Law Firm as Interim Lead Class Counsel, appoint Srourian Law Firm, P.C. and Zemel Law LLC as Executive Committee Firms, and appoint Siri Glimstad LLP as Plaintiffs' Liaison Counsel. As demonstrated below, these attorneys have substantial class-action and data-breach experience and knowledge that will benefit the putative class as this litigation proceeds.

### a. Lori G. Feldman of George Feldman McDonald, PLLC

Ms. Feldman, managing member of George Feldman McDonald, PLLC ("GFM"), has more than 30 years of experience representing plaintiffs and classes in complex class actions, particularly in data breach cases. Ms. Feldman has served as lead, co-lead counsel, or on the

9

Executive Committee in numerous nationwide class actions and has substantial experience litigating class actions and complex civil litigation, including data breach, consumer protection, and privacy cases. *See e.g., In re Shields Health Care Group, Inc.*, No. 1:22-CV-10901-PBS (D. Mass.) (Co-Lead Counsel in data breach class action) (Saris, J.); *In re Meta Pixel Tax Filing Cases*, No. 3:22-CV-07557-SI (N.D. Cal.) (Co-Chair of Plaintiffs' Steering Committee in data privacy breach case); *Tate v. EyeMed Vision Care LLC*, No. 1:21-CV-0036 (S.D. Ohio) *(*Co-Lead Counsel in data breach class action*)*; *In re Morgan Stanley Data Security Litig.*, No. 1:20-CV-05014-MKV (S.D.N.Y.) (Executive Committee in data breach case which settled for $60 million); *In re Fortra File Transfer Software Data Security Breach Litig.*, No. 1:24-MD-03090 (S.D. Fla.) (Plaintiffs' Discovery Committee in MDL data breach case); *Zimmerman et al. v. Highmark, Inc.*, No. 2:23-CV-00250 (W.D. Penn.) (Executive Committee in data breach case); *In re Nurture Baby Food Litig.*, No. 1:21-CV-0127-MKV (S.D.N.Y.) (Co-Lead Counsel in consumer labeling case); *In re Pacific Market Internat'l, LLC, Stanley Tumbler Litig.*, No. 2:24-CV-00191 (W.D. Wash.) (Executive Committee in consumer labeling class action). Ms. Feldman has obtained class and individual recoveries in excess of $250 million and has successfully litigated against some of the largest and well-funded corporate defendants in the world. Ms. Feldman's biography and resume are attached hereto as Exhibit 1.

Furthermore, GFM as a firm has litigated numerous additional privacy and data breach cases throughout the country, including *Bowen v. Paxton Media Group*, 5:21-CV-00143-GNS (W.D. Ky.) (Co-Lead Settlement Class Counsel); *In re Lakeview Loan Servicing Data Breach Litig.*, No. 1:22-CV-20955 (S.D. Fla.); *Geleng v. Independent Living Systems, LLC*, No. 23-CV-21060 (S.D. Fla.) (Executive Committee); *Jaramillo v. AT&T Inc.*, No. 3:24-CV-00761 (N.D.

10

Tex.); and *Dressel v. Continuum Health Alliance, LLC*, No. 3:24-CV-06176 (D.N.J.), among many others.

### b.  A. Brooke Murphy of Murphy Law Firm

A. Brooke Murphy is the founding member of Murphy Law Firm. For more than a decade, Ms. Murphy has specialized in representing plaintiffs in class actions and other complex litigation. Ms. Murphy has litigated numerous data breach class actions across the country where she has obtained several successful rulings on issues of standing, pleading, and class certification. Ms. Murphy has similarly overcome common challenges by defendants in data breach class actions, including on matters involving the applicability of arbitration clauses, assertions of privilege or work-product protections, and attempts to exclude expert testimony.

Through her involvement in data breach class actions, Ms. Murphy has worked closely with consulting and testifying experts to assist in the preparation of data security and damages reports. Ms. Murphy has conducted technical depositions of data security personnel, forensic investigators, and information security consultants. Ms. Murphy is also well-skilled in managing and navigating large document productions and has overseen the search and review of productions involving millions of pages of documents.

Based on her years of extensive experience, Ms. Murphy has been court-appointed as class counsel or co-lead counsel in several data breach class actions. *See, e.g., Archambault v. Riverside Resort & Casino, Inc. and Riverside Resort & Casino, LLC*, Case No. 2:24-cv-1691 (D. Nev.); *In re Bridgeway Center Data Breach Litigation*, Case No. 2024-CA-1395 (Okaloosa County, Fla.); *Saker v. Cherry Street Services, Inc.,* Case No. 24-04205-NZ (Mich., Kent Cty.); *Lockridge v. Quality Temporary Services, Inc.,* Case No. 4:22-cv-12086 (S.D. Mich.); *Rose v. BHI Energy Services, LLC, et al.*, Case No. 1:23-cv-12513 (D. Mass.); *In re Precision Imaging Centers Data*

*Breach Litigation.*, Case No. 2023-CA-009321 (Duval County, Fla.); *In re: Mondelez Data Breach Litig.*, Case No. 1:23-cv-0399 (N.D. Ill.); *Perez v. Carvin Wilson Software, LLC,* Case No. CV-23-00792-PHX-SMM (D. Ariz.); *Sanders, et al., v. Ibex Global Solutions, Inc., et al.*, Case No. 1:22-cv-00591-TNM (D.C.C.); *In re: Solara Medical Supplies Data Breach Litig.,* Case No. 3:19-cv-00284-H-KSC (S.D. Cal.); *McFarlane v. Altice USA, Inc.,* Case No. 20-CV-1297-JMF (S.D.N.Y.). Ms. Murphy's biography and resume is attached hereto as Exhibit 2.

### c.   Srourain Law Firm, P.C.

Srourian Law Firm, P.C., is a Los Angeles-based law firm dedicated to fighting for the rights of consumers and employees since its inception in 2013. Mr. Srourian currently serves as counsel of record on approximately 100 class action data breach cases. Judges around the country have appointed Srourian Law Firm as Lead or Co-Lead Counsel in class action data breach matters, including *Boyd et al. v. Prudential Financial, Inc*. (2:24-cv-06818-SRC-AME) (D.N.J.), a national data breach involving approximately 2.3 million individuals; *Malinowski et al. v. International Business Machine Corporation*, *et al.* (7:23-cv-08421-NSR) (S.D. New York), a national data breach involving approximately 500,000 individuals; *Conifer et al. v. Conifer Revenue Cycle Solutions, LLC*, et al. (2:23-CV-01987 AB) (S.D.N.Y.), a national data breach involving approximately 100,000 individuals; *Lenaway v. Octapharma Plasma, Inc.* (3:24-CV-424-MOC) (W.D.N.C.), a national data breach involving approximately 200,000 individuals; and *Feathers et al. v. On Q Financial LLC* (CV-24-00811-PHX-SMB) (D. Ariz.), a national data breach involving approximately 211,000 individuals.

Srourian Law Firm has additionally been appointed to the Plaintiff's Steering/Executive Committee for the following class action data breach cases: *Cain et al v. CGM, L.L.C* (1:23-cv-02604) (N.D. Ga.), *Hahn et al. v. Phoenician Medical Center, Inc.,* (CV2023-010982) (Superior

Court of the State of Arizona, County of Maricopa), *Dudurkaewa v. Midfirst Bank and Midland Financial Co.,* (5:23-cv-00817-R) (W.D. Okla.), *Trottier v. Sysco Corporation* (4:23-cv-01818) (S.D. Tex.), *Mathis v. Planet Home Lending, LLC* (3:24-cv-00127) (D. Conn.), *Gambino v. Berry, Dunn, McNeil & Parker, LLC* (2:24-cv-00146) (D. Me), *Tambroni v. WellNow Urgent Care, P.C.* (1:24-cv-01595) (N.D. Ill.), and *In Re: Golden Corral Data Breach Litigation* (5:24-cv-123) (E.D.N.C.). Additional information about Srourian Law Firm is attached hereto as Exhibit 3.

### d.   Zemel Law LLC

Zemel Law ("Zemel") is a litigation boutique focusing on consumer protection law. Zemel has handled over a thousand cases concerning credit reporting, privacy violations, and debt collection violations. Zemel has been certified as class counsel and in leadership positions in numerous courts throughout the Country. *See e.g. In Re Dropbox Sign Data Breach Litigation*, 4:24-cv-02637-JSW, (CAND 2024); Watson *v. Manhattan Luxury Autos., Inc*., 2022 WL 4586407, at \*1 (S.D.N.Y. Sep. 29, 2022); *Rincon-Marin v. Credit Control, LLC,* No. 3:17-cv-00007, 2108 WL 1035808 (D. Conn., 2018); *O'Dell v. National Recovery Agency*, 291 F. Supp. 3d 687 (E.D. Pa. 2018); *Del Carmen v. R.A. Rogers*, No. 5:16-cv-00971, (W.D. Tx 2018); *Williams v. Global Credit & Collections et al*., No. 1:17-cv-03323 (N.D.I.L. 2018). These, and other cases, litigated by Mr. Zemel have resulted in millions of dollars of recovery for consumers. He is also an accomplished appellate lawyer, having appeared before several federal and state appellate courts. *See e.g., Chaitoff v. Experian Info. Sols., Inc*., 79 F.4th 800 (7th Cir. 2023); *Hanrahan v. Statewide Collection, Inc*., No. 21-16187, 2022 WL 3998565 (9th Cir. Sep. 1, 2022); *Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88 (2d Cir. 2021); *Hammer v. Equifax Info. Servs*., 974 F.3d 564 (5th Cir. 2020); *Knight v. Midland Credit Mgmt*., 755 F. App'x 170 (3d Cir.

2018). For all the foregoing reasons, Mr. Zemel is best suited to prosecute this case and should be appointed to the Executive Committee. *See* Firm Resume, attached hereto as Exhibit 4.

### e. Siri Glimstad LLP

Siri & Glimstad LLP ("S&G"), a national class action firm that has served as class counsel in a broad spectrum of class action and civil rights cases nationwide and recovered compensation for millions of individuals. S&G concentrates on complex civil litigation and consumer class actions, including an emphasis on data privacy litigation. The firm has played a significant role in successfully litigating dozens of data breach and privacy class actions from inception through discovery and leading to court approved settlement.

The data privacy matters currently on S&G's docket include cases in which S&G served or is serving as (1) settlement class counsel, including, without limitation: *Carter, et al. v. Vivendi Ticketing US LLC d/b/a See Tickets*, No. 8:22-cv-01981 (C.D. Cal.), which received final approval for a settlement involving 437,310 class members and a $3,000,000 non-reversionary settlement fund; *Medina v. Albertsons Companies, Inc.*, Case No. 1:23-cv-00480 (D. Del.), which received final approval for a settlement involving 33,000 class members and a $750,000 non-reversionary settlement fund; *In re Sovos Compliance Data Security Incident Litigation*, Case No. 1:23-cv-12100 (D. Mass.), which received final approval for a settlement involving 490,000 class members and a $3,534,128.50 non-reversionary settlement fund; and *In re: Planet Home Lending, LLC Data Breach*, Case No. 3:24-cv-127 (D. Conn.), which received preliminary approval for a settlement involving 285,000 class members and a $2,425,000.00 non-reversionary settlement fund; and (2) court-appointed interim class counsel, including, without limitation: *In re Retina Group of Washington Data Security Incident Litigation*, Case No. 8:24-cv-00004 (D. Md.); *Pacheco et al. v. Community First Medical Center*, Case No. 2023-CH08487 (Cir. Court of Cook Cty., Ill.); *In*

14

*re: Vivendi Ticketing US LLC, d/b/a See Tickets Data Security Incident*, Case No. 2:23-cv-07498 (C.D. Cal.); *Wilson et al. v. Frontier Communications*, Case No. 3 :24-cv-1418 (N.D. Tex.); and *In re Unite Here Data Security Incident Litigation*, Case No. 1:24-cv-01565 (S.D.N.Y.). Further details about S&G's practice and accomplishments are included in the firm resume attached hereto as Exhibit 5.

### 3. Proposed Interim Class Counsel Have Committed, and Will Continue to Commit, the Resources Necessary to Fairly and Adequately Represent the Class.

A court appointing interim class counsel should consider, in part, the resources that counsel will commit to representing the putative class. Fed. R. Civ. P. 23(g)(1)(C). Here, Proposed Interim Class Counsel can, as needed, draw upon the skills and talents of experienced attorneys and staff members located across the country. Each attorney understands the time, energy, and skill necessary to lead this litigation and all have committed the resources required to ensure the effective and efficient representation of the Class members. In fact, Proposed Interim Class Counsel have already demonstrated their commitment to this litigation by devoting substantial resources to this litigation and coordinating among themselves to organize in one venue and file this motion for consolidation and leadership proposal. They are also expected to pay assessments when necessary to ensure that adequate funds are available to prosecute this litigation. And, as their résumés and counsels' experience indicate, Proposed Interim Class Counsel have the resources to see this litigation through to its conclusion, including trial. *See* Exhibits 1-5, attached hereto.

### C. Other Factors Support the Appointment of Proposed Interim Class Counsel Firms.

Notably, the proposed leadership structure has the support of all Plaintiffs and firms involved in the Related Actions. *See In re Aluminum Phosphide Antitrust Litig.*, No. 93-2452,

15

1994 WL 481847, at *5, 7 (D. Kan. May 17, 1994) ("In designating lead counsel, the court will also give due consideration to the preferences expressed by the parties themselves, through their counsel." "Absent persuasive evidence to the contrary, the court assumes that nominations and votes for lead counsel are made in good faith for reasons that benefit the client."); *see also In re Wendy's Co. S'holder Derivative Litig.*, No. 1:16-cv-1153, 2018 WL 6605394 at *2 (S.D. Ohio Dec. 17, 2018) (citation omitted); *Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-01610, 2020 U.S. Dist. LEXIS 164895, at *10 (N.D. Ill. May 30, 2020) ("And all Plaintiffs in this action have consented to the proposed leadership structure."); *Manual for Complex Litigation* §§ 10.22 (noting desirability of "the attorneys coordinat[ing] their activities without the court's assistance"), 10.272 (describing "private ordering" approach).

Indeed, after the first cases were filed, Proposed Interim Class Counsel moved quickly to coordinate the cases and the proposed leadership structure to avoid any delay attendant with potential multi-district litigation proceedings due to the egregious nature of Defendant's alleged unlawful conduct and likelihood of imminent further harms to Plaintiffs and the Class Members. Proposed Interim Class Counsel seek this leadership structure to best serve the interests of the class in the most efficient manner possible.

Importantly, Proposed Interim Class Counsel have not made any agreements with each other with respect to funding, cost-sharing, pooling clients, fees, or any other matter. They all understand that they will be required to make contributions to fund the litigation, and they will not accept any third-party litigation funding to do so.

While Proposed Interim Class Counsel intend to litigate the case zealously, they are fully aware of the Court's expectation that they prosecute the case efficiently and without duplication. Accordingly, they have already discussed how best to organize to effectively use their members'

diverse skills and unique experiences for the efficient prosecution and management of this litigation, while avoiding unnecessary and duplicative billing.

In discussing the consolidation of filed cases and transfer to one venue, Proposed Interim Class Counsel quickly coalesced to cooperatively move this case forward. Not only is this leadership structure supported by counsel for all Plaintiffs involved in this litigation, but the firms are committed to continue their collegial approach without duplication of effort. Accordingly, Plaintiffs respectfully submit that the proposed leadership structure will serve the best interests of Plaintiffs and the proposed class.

## V.    CONCLUSION

Wherefore, Plaintiffs respectfully request that the Court: (i) consolidate the above-captioned cases for all purposes, pursuant to Federal Rule of Civil Procedure 42(a); and (ii) appoint Lori G. Feldman and A. Brooke Murphy as Interim Lead Counsel; (iii) appoint Srourian Law Firm, P.C. and Zemel Law LLC as Interim Executive Committee Firms; and (iv) appoint Siri Glimstad LLP as Interim Liaison Counsel.

Dated: October 25, 2024

*/s/ Christina Xenides*
Christina Xenides (Bar No. 677603)
**SIRI & GLIMSTAD LLP**
1005 Congress Avenue, Suite 925-C36
Austin, TX 78701
Tel: (512) 265-5622
E: cxenides@sirillp.com

***Proposed Interim Liaison Counsel***

Lori G. Feldman*
**GEORGE FELDMAN McDONALD, PLLC**
102 Half Moon Bay Drive
Croton-on-Hudson, New York 10520
Telephone: (917) 983-9321
lfeldman@4-justice.com
eservice@4-justice.com

A. Brooke Murphy*
**MURPHY LAW FIRM**
4116 Will Rogers Pkwy, Suite 700
Oklahoma City, OK 73108
Telephone: (405) 389-4989
abm@murphylegalfirm.com

*Proposed Interim Lead Counsel*

Daniel Srourian, Esq.*
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Drive, Suite 200
Beverly Hills, California 90210
Telephone: (213) 474-3800
Facsimile: (213) 471-4160
Email: daniel@slfla.com

Elizabeth Apostola , Esq.
**ZEMEL LAW LLC**
400 Sylavn Ave, Suite 200
Englewood Cliffs NJ 07632
T: 862-227-3106
ea@zemellawllc.com

*Proposed Interim Executive Committee Members*

* *pro hac vice* applications forthcoming

18

## CERTIFICATE OF CONFERENCE PURSUANT TO LOCAL CIVIL RULE 7.1(a)

I, the undersigned, hereby certify that counsel for Defendant has not yet made an appearance in the case. Therefore, we have been unable to confer with counsel on the relief sought.

*/s/ Lori G. Feldman*
Lori G. Feldman

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 25, 2024, the foregoing was filed electronically with the Clerk of Court using the CM/ECF System and was thereby served on all counsel of record.

*/s/ Christina Xenides*
Christina Xenides

19