### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| *In re: Fidelity Data Breach Litigation* | Case No. 1:24-cv-12601-LTS |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARILY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs,[1] individually and on behalf of the proposed Settlement Class, respectfully submit this Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. The motion is supported by the Joint Declaration of Class Counsel ("Joint Decl.") and accompanying exhibits, this Memorandum of Law, and upon all prior proceedings, pleadings, and filings in the above-captioned action.

### BACKGROUND AND PROCEDURAL HISTORY

Fidelity is a financial services company that offers a wide range of products and services. Fidelity is one of the world's largest asset managers. As part of its business, Defendants obtained and stored the personal information of Plaintiffs and the proposed Settlement Class Members. Between August 17, 2024 and August 19, 2024, an unauthorized third party accessed Fidelity's computer network and obtained certain personal information of Plaintiffs and Settlement Class Members without authorization. *See* Joint Decl., Ex. A, Settlement Agreement ("Agreement," or "S.A.") § I.A. Fidelity determined 77,099 individuals were required to be notified of the Data Security Incident under applicable U.S. state laws or, in the case of individuals located outside of the U.S., applicable foreign laws. *Id.* § I.B. On or around October 9, 2024, Fidelity began providing notice to individuals located in the United States for whom it was able to locate an

---

[1] Capitalized terms herein shall have the same meanings as those defined in the Settlement Agreement, attached to the Motion for Preliminary Approval as ***Exhibit 1***.

address. *Id.* In addition, Fidelity identified approximately 86,000 other individuals or joint accountholders who had a financial account and routing numbers implicated, but whom Fidelity determined were not subject to state-law notification requirements. *Id.* The total approximately 155,000 individuals or joint accountholders constitute Settlement Class Members.

On February 10, 2025, after having filed separate actions, the Plaintiffs filed a Consolidated Class Action Complaint, asserting (i) negligence; (ii) breach of implied contract; (iii) breach of the implied covenant of good faith and fair dealing; (iv) unjust enrichment; (v) violation of the Massachusetts Consumer Protection Act; (vi) violation of the California Consumer Privacy Act; (vii) violation of the California Customer Records Act; (viii) violation of the California Unfair Competition Law; and (ix) violation of New York General Business Law § 349. ECF No. 35.

On April 11, 2025, Fidelity moved to dismiss the Complaint, to which Plaintiffs responded on June 10, 2025, and for which Fidelity replied on July 1, 2025. *Id.* 39-41, 44, 45. Shortly after completing that briefing, the Parties began settlement negotiations. On August 25, 2025, at the Parties' request, the Court stayed the Action pending mediation. *Id.* 46, 47. Fidelity responded to Plaintiffs' informal discovery requests about the Data Security Incident and class damages. Joint Decl. ¶ 15. The Parties also prepared and submitted detailed mediation statements. *Id.*

On October 23, 2025, the Parties participated in a full-day mediation session before experienced class action mediator, Hon. Wayne Andersen (Ret.) of JAMS. *Id.* ¶ 8. While the mediation was not successful that day, Judge Anderson assisted the Parties' continued negotiations to reach an agreement in principle. *Id.* The proposed Settlement terms, which are the result of good faith and arm's length negotiations by experienced and capable counsel with full knowledge of the law, facts, and the inherent risks of litigation, are memorialized in the S.A. *Id.*

This Settlement provides meaningful relief for the Settlement Class and resolves all claims

in the Action. Plaintiffs now respectfully request this Court: (1) preliminarily approve the Settlement as being within the range of fair, adequate, and reasonable; (2) provisionally certify the Settlement Class for settlement purposes only; (3) approve the Notice Program and the form and content of the Notices; (4) approve the Claim Form and Claim process; (5) approve the opt-out and objection procedures; (6) appoint Plaintiffs as Class Representatives and A. Brooke Murphy of Murphy Law Firm and Lori G. Feldman of Hecht Partners, LLP[2] as Class Counsel for the Settlement Class; (7) appoint Simpluris, Inc. as the Settlement Administrator; (8) stay the Action pending Final Approval of the Settlement; (9) enjoin and bar all members of the Settlement Class from initiating or continuing in any litigation or asserting any claims against Defendant and the Released Parties arising out of, relating to, or in connection with the Released Claims pending Final Approval; and (10) schedule a Final Approval Hearing at least 100 days after the date of the Preliminary Approval Order, or as soon thereafter as the matter may be heard.

## SUMMARY OF SETTLEMENT

### A.     Settlement Class and California Subclass

The Settlement Class is defined as follows:

All individuals within the United States of America to whom Fidelity provides notice of the Data Security Incident under relevant state law before the Notice Deadline associated with this Settlement, and all other individuals within the United States whose financial account number and routing number were exposed in the Data Security Incident (where joint accountholders had a single financial account number and routing number compromised, only one claim is permitted under the settlement).

S.A. ¶ 37. The California Subclass includes Settlement Class Members within California. *Id.* ¶ 4.

Excluded from the Settlement Class are the Judge assigned to this Action, the Judge's immediate family, Court staff, the officers and directors of Defendants, and persons who timely and validly

---

[2] On February 21, 2026 George Feldman McDonald, PLLC filed its Notice of Change of Firm Affiliation, Address and Email Designation [DE 58].  So, while the name of the firm is now Hecht Partners LLP, the attorneys responsible for this matter are identical.

request exclusion from the Settlement Class. *Id.* ¶ 37.

**B.    The Settlement Benefits**

The Settlement provides for both monetary and non-monetary, equitable relief. Fidelity agrees to fund a non-reversionary, cash $2,500,000.00 Settlement Fund that will be used to pay: (a) all Valid Claims; (b) the Notice and Administrative Expenses; and (c) any Court-awarded Service Awards and Attorneys' Fees and Expenses Award. *Id.* ¶¶ 39, 46, 50, 53, 56, 58. Defendants have also agreed to implemented business practice enhancements described in the S.A. *Id.* ¶ 58.e.

In sum, Settlement Class Members are eligible to receive the following benefits:

***Documented Monetary Losses.*** Claims for Documented Monetary Losses for up to $5,000 that are fairly traceable to the Data Security Incident must be elected on the Claim Form. *Id.* ¶ 58.a. These losses may include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after the Data Security Incident through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges. *Id.* Settlement Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source. *Id.*

***Identity Theft Protection and Credit Monitoring.*** On the Claim Form, all Settlement Class Members may Claim two years of single-bureau credit monitoring and at least $1,000,000 of fraud/identity theft insurance. *Id.* ¶ 58.b. Codes to activate this Identity Theft Protection and Credit Monitoring will be sent either to an email address or the mailing address on the Claim Form. *Id.*

***Pro Rata Cash Payment.*** All Settlement Class Members may elect a Pro Rata Cash Payment estimated at $100 per claimant. *Id.* ¶ 58.c., 72. The final amount of this benefit shall be

determined pro rata based on the amount remaining in the Settlement Fund following payment of the Attorney's Fees and Expenses Award, Service Awards, Notice and Administrative Expenses, costs of Identity Theft Protection and Credit Monitoring, Documented Monetary Losses, and CCPA Payments. *Id.* ¶ 58.c. There will be no maximum payment amount for a Pro Rata Cash Payment to a Settlement Class Member. *Id.*

*CCPA Payment.* California Subclass Members may also submit a claim for a $50.00 cash payment for the CCPA claim they have brought as California residents against Defendants. *Id.* ¶ 58.d. The CCPA Payment may be pro rata decreased if insufficient funds remain following the payment of any Attorneys' Fees and Expenses Award, any Service Awards, Notice and Administrative Expenses, Documented Monetary Losses, and the costs for Identity Theft Protection and Credit Monitoring. *Id.*

*Business Practice Changes.* Plaintiffs have received assurances Defendants have taken certain reasonable steps to further secure its systems following the Data Security Incident, and Defendants have taken and are continuing to take certain measures with respect to the account holders associated with data accessed in the Data Security Incident. *Id.* ¶ 58.e. Defendants, in instances where potentially unauthorized activity has been detected, will conduct a review and will continue to perform the review for potential links between the detected activity and the Data Security Incident, which has continued throughout this litigation. Defendants will continue for two years from the date of the Data Security Incident, and require multi-factor authentication at login for account holders if not previously enabled. *Id.* All costs and expenses incurred in implementing these changes shall be incurred by Defendants separate and apart from the Settlement Fund. *Id.*

### C.    Notice Program and Settlement Administrator

The Parties have agreed on a comprehensive Notice Program, which includes Short Form

Notice, Long Form Notice, Settlement Website, and Settlement telephone line for frequently asked questions. *Id.* ¶ 25, § VIII, and Exs. B-C. Defendants will provide the Class List to the Settlement Administrator no later than 10 days after entry of the Preliminary Approval Order. *Id.* ¶ 75.

The proposed Settlement Administrator, Simpluris, Inc., is a well-respected and reputable third-party administrator. Joint Decl. ¶ 46. It shall fulfill the requirements of the Preliminary Approval Order and Agreement, including the Notice Program, Claim process, Escrow Account for the Settlement Fund, and Settlement benefits. S.A. § IX. Within 45 days following entry of the Preliminary Approval Order, the Settlement Administrator shall commence the Notice Program, using the Court-approved Notice forms. *Id.* ¶ 75. Short Form Notice will be sent to Settlement Class Members via postcard or email. *Id.* For Email Notices that bounce back, or are otherwise undeliverable, a Postcard Notice will be sent if a postal address is available or can be identified. *Id.* The Settlement Administrator shall perform reasonable address traces for Postcard Notices returned undeliverable. *Id.* In addition, if Class Counsel requests, the Settlement Administrator shall provide a Reminder Notice to any member of the Settlement Class or California Subclass who has yet to opt-out or to submit a Claim Form at least 30 days before the Claims Deadline. *Id.*

The Short Form Notice will include, *inter alia*: a description of the Settlement terms; how to submit a Claim Form; the Claims Deadline; the Opt-Out Deadline; the Objection Deadline; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class Members may access the Agreement and other related materials. *Id.* ¶ 42, Ex. C. The Long Form Notice will also include the opt-out and objection procedures, and the Short Form Notice shall direct the Settlement Class Members to the Long Form Notice for instructions. *Id.* ¶ 20, Ex. B.

The Settlement Website will be established as a means for the Settlement Class to submit Claim Forms and obtain notice and information about the Settlement, including hyperlinked access

to the Agreement, the Notice, Preliminary Approval Order, Claim Form, and other relevant documents. *Id.* ¶ 41. The Settlement Administrator will also establish and maintain a toll-free telephone line for Settlement Class Members to call and obtain answers to questions. *Id.* ¶ 78.e.

### D.    Claims Process and Distribution of Settlement Funds

The Claim process is structured to ensure the Settlement Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their Claim for a cash payment, familiarize themselves with the Identity Theft Protection and Credit Monitoring benefits, and decide whether to opt-out of or object to the Settlement.

The Claims Deadline is 90 days after the Notice Deadline, and Claim Forms must be submitted to the Settlement Administrator either by mail or online. S.A., ¶¶ 6, 71, Ex. A. The Settlement Administrator has authority to assess the validity of Claims. If the Settlement Administrator determines a Claim is deficient in whole or part, within a reasonable time of making such a determination, the Settlement Administrator shall notify the Settlement Class Member of the deficiencies and give 21 days to cure the deficiencies. *Id.* ¶ 60.

The Settlement Administrator must first use the funds available in the Net Settlement Fund to make payments for Valid Claims for Documented Monetary Losses, then to fund Valid Claims for Identity Theft Protection and Credit Monitoring, then to CCPA Payments, and finally to make pro rata distributions for Pro Rata Cash Payments. *Id.* ¶ 73. Cash payments shall issue by electronic payment, or upon request, a Settlement Check mailed within 30 days after the Effective Date. *Id.* ¶ 65. Activation codes for the Identity Theft Protection and Credit Monitoring shall also be emailed or mailed within the same 30 days. *Id.* Settlement Checks will be valid for 90 days. *Id.* ¶ 66. For any checks returned undeliverable, the Settlement Administrator shall make reasonable efforts to locate a valid address and resend it within 30 days, with replacement Settlement Checks being

valid for 60 days. *Id.* ¶ 67. The Agreement contains procedures for uncashed Settlement Checks in an effort to reissue a check and to address any unclaimed funds remaining in the Net Settlement Fund, including a potential second distribution to Participating Settlement Class Members with Valid Claims for Pro Rata Cash Payments, following which any remaining funds shall be distributed by state law or to the non-profit organization National Cybersecurity Alliance as a *cy pres* distribution, subject to this Court's approval. *Id.* ¶¶ 68-69.

### E.    Releases

Plaintiffs and Settlement Class Members who do not timely and validly opt-out of the Settlement will be bound by the Settlement, including the Releases that discharge the Released Claims against the Released Parties. *Id.* § XI. The Released Claims are narrowly tailored and are only claims arising out of or relating to the Data Security Incident. S.A. ¶ 30.

### F.    Service Awards, Attorneys' Fees, and Costs

Plaintiffs will apply to the Court for a Service Award of up to $2,500.00 for each Class Representative, S.A., ¶ 97, and for an Attorneys' Fees and Expenses Award including attorneys' fees not to exceed one-third of the Settlement Fund ($833,333.00), plus reimbursement of reasonable litigation costs and expenses not to exceed $45,000. *Id.* ¶ 99. This Settlement is not contingent on approval of the requested Service Awards or Attorneys' Fees and Expenses Award, and if the Court denies the requests or grants amounts less than what were requested, the remaining provisions of the Agreement shall remain in force. *Id.* ¶¶ 98, 101. The provision for attorneys' fees and costs was negotiated after all material terms of the Settlement. *Id*.

## ARGUMENT

The First Circuit maintains a strong policy favoring settlements, especially in class actions. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 36 (1st Cir. 2009); *Lazar v.*

*Pierce*, 757 F.2d 435, 440 (1st Cir. 1985) ("overriding public interest in favor of the voluntary settlement of disputes, particularly where class actions are involved."). "Prior to granting preliminary approval of the settlement, the Court must be satisfied that: (A) the proposed class should be certified for the purpose of settlement; (B) the settlement is fair, reasonable, and adequate; and (C) the proposed notice and notice plan satisfy due process requirements." *Meaden v. HarborOne Bank*, No. 23-CV-10467-AK, 2023 WL 3529762, at *2 (D. Mass. May 18, 2023) (citation omitted).

## I.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

In a preliminary evaluation of a proposed settlement, the court makes an initial determination regarding the fairness, reasonableness, and adequacy of the settlement terms. *Id*. at *3 "[T]he ultimate decision by the [court] involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proposed settlement." *Cohen v. Brown Univ.*, 16 F.4th 935, 944 (1st Cir. 2021) (citation omitted). The factors the Court must consider are:

(A) the class representative and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[3] "At this preliminary stage, there is a presumption that the settlement is fair, reasonable, and adequate if certain procedural guidelines were followed." *Meaden*, 2023 WL 3529762, at *3. The presumption applies if: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Id.* (citation omitted).

### A. The Settlement Was Negotiated at Arm's Length and Exchanged Sufficient Discovery

Where "the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable." *Jean-Pierre v. J&L Cable TV Servs., Inc.*, 538 F. Supp. 3d 208, 212 (D. Mass. 2021) (citation omitted). Recognizing the benefits of early resolution, the Parties began discussing the possibility of settlement shortly after completing the briefing on Defendant's motion to dismiss. Joint Decl. ¶¶ 6, 7. The Parties scheduled mediation session with Judge Andersen, a former federal district judge and well-respected and experienced class action mediator. *Id.* ¶ 8. Before mediation, the Parties engaged in informal discovery, and exchanged mediation briefs, enabling them to better evaluate the merits of Plaintiffs' claims and the strengths of Defendants' defenses. *Id.* ¶ 7. On October 23, 2025, the Parties engaged in a full-day arm's length mediation session and with Judge Andersen's guidance, the Parties ultimately agreed on the material Settlement terms following additional negotiations. *Id.* The mediator's involvement further supports the finding of procedural fairness via arm's length negotiations. *See* 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 13:50 (4th ed. 2002). There is no evidence of fraud, collusion, or improper conduct with regard to the Settlement terms. Accordingly, Federal Rule of Civil Procedure 23(e)(2)(B) is satisfied.

### B. The Parties Engaged In Sufficient Discovery

---

[3] There is no agreement made in connection with the Settlement that is required by Fed. R. Civ. P. 23(e)(3) to be identified other than the Agreement.

In assessing the sufficiency and meaningfulness of discovery, the issue is not whether discovery was completed, but whether "sufficient discovery [was] conducted to make an intelligent judgment about settlement." *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 107 (D. Mass. 2010). Here, the parties reached the proposed Settlement after exchanging informal discovery to aid mediation. Joint Decl. ¶¶ 7-8. The discovery received and reviewed by Class Counsel under Fed. R. Evid. 408, along with their knowledge and experience in this area of the law, provided them with the information needed to objectively evaluate the strengths and weaknesses of Plaintiffs' and Settlement Class Members' claims. *Id*. ¶¶ 11-16. Though the parties had not completed all discovery, Class Counsel has litigated numerous data breach class actions and was fully informed regarding the type of discovery necessary to conduct informed and empowered settlement negotiations. *Id*. Based on the information provided and the benefits achieved for the Class, Class Counsel believe the Settlement is an excellent result. *Id*. ¶ 37. Thus, Class Counsel believe the Settlement is fair, reasonable, and adequate. *Id*. ¶ 10. Because the parties exchanged sufficient information to adequately inform them "about their respective litigation positions," this factor weighs in favor of preliminary approval. *In re M3 Power Razor System Marketing & Sales Prac. Litig.*, 270 F.R.D. 45, 63 (D. Mass. 2010) ("*M3 Power*").

### C.  Class Counsel Are Highly Experienced in Data Breach Class Litigation

Courts give significant weight to the judgment of experienced counsel who have engaged in arm's-length settlement negotiations. *See, e.g., Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight.").

Here, Class Counsel are experienced in prosecuting complex class actions nationwide,

11

including data breach cases. Joint Decl. ¶¶ 11-12. Class Counsel have demonstrated that they are well-versed in data and privacy law and have prosecuted this case vigorously with a commitment to obtaining a reasonable recovery for the Class. *Id.* Class Counsel identified and investigated Class Members' claims, conducted informal discovery related to Class Members' claims and Defendant's defenses, and conducted extensive negotiations (a full-day mediation and extended settlement discussions) to secure meaningful relief for class members in the form of the proposed Settlement Agreement. *Id.* § II. Given their extensive experience in consumer class litigation, particularly in data breach litigation, Class Counsel strongly believe the proposed Settlement is fair, reasonable, and adequate. *Id.* ¶ 10. Thus, this factor supports preliminary approval.

### D.  Other Factors Show That the Settlement is Fair, Reasonable, and Adequate

*First,* in judging the Settlement's procedural fairness, the Court should consider whether the Class Representatives and Class Counsel "have adequately represented the class." Rule 23(e)(2)(A). Plaintiffs must establish that: (1) there is no antagonism or conflict of interest between the Class Representatives and other members of the Settlement Class; and (2) Class Counsel and Class Representatives are competent, willing, and able to protect the interests of absent Settlement Class members. *M3 Power*, 270 F.R.D. at 55 (quoting *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir.1985)). Here, all Settlement Class Members and the Class Representatives are potentially affected by the same Data Security Incident and thus have common interests. Joint Decl. ¶ 40, 43. Moreover, Class Representatives have ably represented the Settlement Class, maintaining contact with Class Counsel and answering questions, reviewing and approving pleadings, assisting in the Action's investigation, and reviewing and approving the Settlement documents. *Id.* Class Counsel have also vigorously pursued the Settlement Class's interests in securing a Settlement bringing immediate, valuable benefits, while avoiding the risks of continued

litigation. *Id.* § IV. ¶ 45. To do so, they drew on their class action experience, including in analogous data breach cases, their detailed investigation of Data Security Incident and its aftermath, and informal discovery exchanged during settlement negotiations, and ultimately negotiated a favorable recovery for the Settlement Class. *Id.* ¶ 12-15, 19-22.

*Second,* courts also consider whether the class relief is adequate to assess the settlement's substantive fairness, in light of the costs, risks, and delay of trial and appeal. Fed. R. Civ. P. 23(e)(2)(C)(i). The costs, risks, and delay of trial and appeal are significant in all data security cases, but particularly in cases involving facts such as these. Joint Decl. ¶ 34. While Plaintiffs are confident in the merits of their claims, the risks involved in prosecuting a class action through trial cannot be disregarded. *Id.* ¶ 33. Due at least in part to their cutting-edge nature and the rapidly evolving law, data security cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *Id.* ¶ 32; *see also, e.g.*, *Logan v. Marker Group, Inc.*, No. 4:22-CV-00174, 2024 WL 3489208 (S.D. Tex. July 18, 2024) (dismissing all but one claim); *Dougherty, et al. v. Bojangles Restaurants, Inc.*, No. 25-CV-00065, DE 34 (W.D.N.C. Sep. 30, 2025); *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522 (PAM/JJK), 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015). Plaintiffs also anticipate substantial additional costs should litigation continue, including expert fees and discovery. Joint Decl. ¶ 32. Plaintiffs would need to defeat the pending motion to dismiss, counter a later motion for summary judgement, and both gain and maintain class certification, with a near inevitable interlocutory appeal attempt. *Id.* Class certification is also a significant hurdle. *Id.* ¶ 37; *see, e.g.*, *Maldini v. Marriott Int'l, Inc.*, 140 F.4th 123 (4th Cir. 2025) (reversing reinstated class certification); *Marriott Int'l, Inc. v. Accenture LLP*, 78 F.4th 677, 688 (4th Cir. 2023) (vacating class certification in data breach case); *Theus v. Brinker Int'l, Inc.*, No. 3:18-cv-686-TJC-MCR, 2025 WL 1786346, at *4 (M.D. Fla. June 27,

2025) (denying class certification in a data breach case); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No.: 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (same).

Through the Settlement, Plaintiffs and Settlement Class Members avoid these and other risks, including potentially losing at trial, and gain significant benefits for the Settlement Class while avoiding the risk of receiving nothing, if the case continued. The Settlement provides immediate and substantial value, including a $2,500,000.00 non-reversionary all-cash Settlement Fund for the benefit of approximately 155,000 Settlement Class Members. Indeed, this Settlement compares very favorably, and in fact exceeds, many similar common fund data breach settlements. *See, e.g.*, *Rentschler, et al. v. Atlantic General Hospital Corp.*, No. 1:23-cv-01005 (D. Md.), ECF No. 24 (preliminary approval order identifying $2,250,000 settlement fund for 136,981 class members), ECF No. 29 (granting final approval); *Beasley v. TTEC Servs. Corp.*, No. 1:22-cv-00097, 2024 WL 710411 (D. Colo. Feb. 21, 2024) (final approval identifying $2,500,000 settlement fund for 197,835 class members).

Additionally, given the substantial litigation risks described above, all Settlement Class Members are entitled to Claim a cash payment (up to $5,000.00 for Documented Monetary Losses or a Pro Rata Cash Payment estimated at $100.00, a $50.00 CCPA Payment (for California Subclass Members), and Identity Theft Protection and Credit Monitoring. Agreement ¶ 58. These dollar amounts are on par with or exceed those approved in other data breach class action settlements. *See, e.g., Sherwood, et al. v. Horizon Actuarial Services LLC*, No. 1:22-CV-01495-ELR (N.D. Ga.) (final approval of a settlement where class members received $5,000 for documented losses or $50.00 alternate cash with no credit monitoring offered). *See also Dunn, et al. v. Complete Payroll Sol., Inc.*, No. 1:25-cv-30045-LTS (D. Mass.), ECF No. 52-54 (granting preliminary approval of settlement with benefits including documented monetary losses up to

$5,000 or a *pro rata* cash payment in the estimated amount of $100.00, and credit monitoring). In addition, Defendants have also made valuable business practice changes related to information security to ensure the personal information of Settlement Class Members is better protected in the future. Agreement ¶ 58.e.

*Third,* the attorneys' fees sought in the amount of one third of the Settlement Fund—are also reasonable and fair. Fed. R. Civ. P. 23(e)(2)(C)(iii); *see also In re Neurontin Mktg. & Sales Practices Litig.*, No. 04-cv-10981-PBS, 2014 WL 5810625, at *3 (D. Mass. Nov. 10, 2014) ("[N]early two-thirds of class action fee awards based on the percentage method were between 25% and 35% of the common fund."); *see also Mazola v. May Dep't Stores Co.,* No. 97 Civ. 10872, 1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999) ("[I]n this circuit, percentage fee awards range from 20% to 35% of the fund. This approach mirrors that taken by the federal courts in other jurisdictions."). While Plaintiffs will fully brief their attorneys' fee request by separate motion, the attorneys' fees, expenses, and Service Awards do not present a barrier to preliminary approval.

*Finally,* the Settlement also treats class members "equitably relative to each other," Fed. R. Civ. P. 23(e)(2)(D), and does not discriminate between any segments of the Settlement Class. Joint Decl. ¶ 21. All Settlement Class Members are eligible to submit Claims for cash payments and Identity Theft Protection and Credit Monitoring, and all benefit from Defendants' security enhancements protecting their personal information. *Id.* This equitable treatment includes the reasonable Service Awards to the Class Representatives. For their commitment to the Action, Plaintiffs may reasonably request Services Awards of $2,500.00 each ($12,500.00 total). *Id.* ¶ 23. Plaintiffs have been instrumental in assisting Class Counsel as Class Representatives. *Id.* ¶ 24. They initiated and remained in contact with Class Counsel, considered and reviewed the pleadings and Agreement, supervised and monitored Class Counsel, provided background documents, and

followed the litigation's progress to ensure the Settlement Class receive the best recovery possible, given the risks of the Action. *Id.* The Class Representatives were prepared to complete their responsibilities, including being deposed and testifying at trial, if needed. *Id.*

As such, the proposed Settlement Agreement is fair, reasonable, and adequate.

## II.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

"Before the court can preliminarily approve the proposed settlement, it first must also 'determine whether to certify the class for settlement purposes.'" *Jean-Pierre*, 538 F. Supp. 3d at 212 (quoting *Hochstadt*, 708 F. Supp. 2d at 101. Under Fed. R. Civ., P. 23(a), a class action may be maintained where the movants demonstrate numerosity, commonality, typicality, and adequacy of representation. Additionally, under Rule 23(b)(3), a class may be maintained where the predominance and superiority elements are met. When evaluating settlement class certification, manageability is no concern because there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Despite the necessary rigorous analysis needed at the preliminary approval stage, class actions are regularly certified for settlement. In fact, similar data breach cases have been certified on a national basis. *See, e.g.*, *In re MOVEit Customer Data Sec. Breach Litig.*, No. 1:23-MD-3038 (D. Mass.) ("*MOVEit*") ECF Nos. 1196, 1202, 1230, 1266, 1300, 1416, 1532, 1534, 1661 (preliminary approval orders).[4]

### A.  The Requirements of Rule 23(a) Are Satisfied

Rule 23(a) permits an action to be maintained as a class action if (i) the class is so numerous that joinder of all members is impracticable; (ii) there are questions of law or fact common to the class; (iii) the claims and defenses of the representative parties are typical of the claims or defenses

---

[4] *See also In re Sovos Compliance Data Sec. Incident Litig.*, No. 1:23-cv-12100 (D. Mass.), ECF No. 42; *In re Berry, Dunn, McNeil & Parker Data Breach Litigation*, No. 24-cv-00146 (D. Maine), ECF No. 71; *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga. 2019); *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015). This case is no different.

of the class; and (iv) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). The Settlement Class meets these requirements.

**Numerosity**. Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). While no strict numerical test exists to define numerosity, numerosity is a "low threshold" which is "generally satisfied where the potential number of plaintiffs exceeds 40." *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009). Here, the Settlement Class of approximately 155,000 individuals is sufficiently numerous, far surpassing the minimum threshold.

**Commonality.** Commonality requires Plaintiffs to show "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality "is relatively easy for a plaintiff to show . . . because [a] *single* common legal or factual issue can suffice to satisfy the requirement." *In re Bos. Sci. Corp. Sec. Litig.*, 604 F. Supp. 2d 275, 281 (D. Mass. 2009). Here, Plaintiffs' claims turn on the adequacy of Defendants' data security in protecting the Settlement Class Members' personal information. Joint Decl. ¶ 40. Evidence to resolve that claim does not vary among Settlement Class Members, and so can be fairly resolved, for purposes of settlement, for all Settlement Class Members at once. *Id.* Thus, commonality is satisfied.

**Typicality.** Fed. R. Civ. P. 23(a)(3) typicality is satisfied where the plaintiff's claims "'arise from the same events or course of conduct as do the injuries of the class' and that the 'plaintiff's claims and those of the class are based on the same legal theory.'" *Meaden*, 2023 WL 3529762, at *2. However, the claims "need not be precisely identical." *Id.* (citation omitted); *Ouadani v. Dynamex Operations E., LLC*, 405 F. Supp. 3d 149, 162 (D. Mass. 2019). Here, typicality is met because the same allegedly unlawful conduct by Defendants was directed at, or affected, Plaintiffs and the Settlement Class Members. Joint Decl. ¶ 41. Their claims stem from the same Data

Security Incident and Defendant's alleged failure to adequately protect their personal information. *See, e.g., MOVEit*, No. 1:23-MD-3038 (D. Mass.), ECF No. 1661 (finding typicality in data breach action).

***Adequacy of Representation.*** Fed. R. Civ. P. 23(a)(4) requires that class representatives show "the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *M3 Power*, 270 F.R.D. at 55. Plaintiffs' interests are aligned with the Settlement Class as they seek relief for injuries arising out of the same Data Security Incident that allegedly exposed their personal information. Joint Decl. ¶ 43. Thus, Plaintiffs are adequate Class Representatives.

With regard to class counsel, courts must consider their: (i) work in identifying or investigating claims; (ii) experience in handling the types of claims asserted; (iii) knowledge of the applicable law; and (iv) the resources that they will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). The Court previously determined when appointing interim class counsel that proposed Class Counsel are "highly experienced in data privacy litigation, highly qualified, and substantially resourced." ECF No. 27. They have worked cooperatively and efficiently and have devoted substantial time and resources to this case to (1) investigate the Data Incident; (2) research and evaluate the appropriate legal claims; (3) interview individuals about their experiences; (4) prepare and file pleadings, including the consolidated complaint; (5) conduct informal discovery (6) prepare mediation materials and participate in mediation; and (7) negotiate the proposed Settlement and prepare the Agreement and exhibits. Joint Decl. § II. Accordingly, the Rule 23(a)(4) and (g) requirements are satisfied.

**B.    The Rule 23(b)(3) Requirements Are Satisfied**

Plaintiffs seek certification under Rule 23(b)(3) for settlement purposes only, which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

*Predominance.* Predominance "does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to class wide proof. Rather, the question is whether there is reason to think that [individualized] questions will overwhelm common ones." *In re Nexium Antitrust Litig.*, 777 F.3d 9, 21 (1st Cir. 2015). Here, Rule 23(b)(3) predominance is readily satisfied because the fact and liability questions common to the Settlement Class members substantially outweigh any possible issues that are individual to some Settlement Class members.

*Superiority*. Superiority is met where "there are thousands of potential class members with small claims resulting from a common issue." *Meaden*, 2023 WL 3529762, at *3; *see also Gintis v. Bouchard Transp. Co.*, 596 F.3d 64, 66-67 (1st Cir. 2010) ("Rule 23 has to be read to authorize class actions in some set of cases where seriatim litigation would promise such modest recoveries as to be economically impracticable."). Here, resolution of thousands of claims in one action is superior to individual lawsuits by promoting consistency and efficiency of adjudication.

Thus, the Settlement Class and California Subclass should be certified.

## III. THE PROPOSED NOTICE PROGRAM AND CLAIM PROCESS SATISFY DUE PROCESS REQUIREMENTS

Fed. R. Civ. P 23(e)(1) requires "direct reasonable notice to all class members who would be bound by" a proposed Settlement. Notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice must be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Moreover, Fed. R. Civ. P. 23(h)(1) requires: "Notice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The Notice Program satisfies the foregoing criteria.

Notice will be disseminated to all Settlement Class Members, who can be identified with reasonable effort from Defendants' record. In addition, Simpluris will administer the Settlement Website containing relevant Settlement information. Further, the Short Form Notice and Long Form Notice include, among other information: a description of the material Settlement terms; the claims asserted; how to submit a Claim Form; the Claims Deadline; the Opt-Out Deadline; the Objection Deadline; the Final Approval Hearing date; and the Settlement Website address at which the Settlement Class may access this Agreement and other related material. S.A. ¶¶ 75-77; Ex. B-C; Fed. R. Civ. P. 23(c)(2)(B). There is also a provision for a potential Reminder Notice. *Id.* ¶ 75. Finally, the Notice Program satisfies Rule 23(h)(1), as it notifies the Settlement Class that Class Counsel may apply to the Court for an award of attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of costs. *Id.*, Exs. B-C. Thus, the Court should approve the Notice Program, including the form and content of the Notices.

Moreover, the Court should approve the Settlement Administrator to implement the Notice Program and oversee the Claim process.  After due consideration, Simpluris was selected to serve as the proposed Settlement Administrator. Simpluris is an established and well-regarded administrator and has extensive experience in data breach cases. Joint Decl. ¶ 46.

## IV.    CONCLUSION

Plaintiffs and Class Counsel respectfully request the Court enter the proposed Preliminary Approval of Class Action Settlement Order. *See* Joint Decl., Exh. 1-D.

Dated: March 10, 2026                    Respectfully submitted,

*/s/ Lori G. Feldman*                     */s/ A. Brooke Murphy*
Lori G. Feldman (pro hac vice)            A. Brooke Murphy (pro hac vice)
**HECHT PARTNERS LLP**                    **MURPHY LAW FIRM**
125 Park Avenue, 25th Floor               4116 Will Rogers Pkwy, Suite 700
New York, New York 10117                  Oklahoma City, OK 73108
Telephone: (917) 983-9321                 Telephone: (405) 389-4989
lfeldman@hechtpartners.com                abm@murphylegalfirm.com

*Interim Co-Lead Counsel for Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

*/s/ Lori G. Feldman*
Lori G. Feldman