**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| *In re: Fidelity Data Breach Litigation* | Case No. 1:24-cv-12601-LTS |

**JOINT DECLARATION OF CLASS COUNSEL IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND DIRECTION OF CLASS NOTICE**

We, A. Brooke Murphy and Lori G. Feldman hereby declare as follows:

1. We are proposed Class Counsel under the proposed Settlement between Plaintiffs Richard Mason, Alexander Elterman, Ratiek Lowery, Robert Wilbert, and John Nixon (collectively, "Plaintiffs" or "Class Representatives"), on behalf of themselves and the Settlement Class, and Defendants FMR LLC d/b/a Fidelity Investments and Fidelity Brokerage Services LLC d/b/a Fidelity Investments (collectively, "Fidelity" or "Defendants"), being presented to the Court for Preliminary Approval. We submit this joint declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Direction of Class Notice filed contemporaneously herewith. We have personal knowledge of the facts set forth herein and could testify competently as to them if called upon to do so.

## I.   BACKGROUND AND PROCEDURAL HISTORY

2. Between August 17, 2024 and August 19, 2024, a third party accessed Fidelity's computer network and obtained certain information without authorization. Based on a subsequent forensic investigation, Fidelity determined that the unauthorized third party potentially accessed certain personal information of Plaintiffs and the Settlement Class Members (the "Data Security Incident").

3. Following an investigation, Fidelity determined that approximately 77,099 individuals were required to be notified of the Data Security Incident. On or around October 9,

1

2024, Fidelity began the process of providing notice to individuals located in the U.S. for whom it was able to locate an address. In addition, Fidelity has identified approximately 86,000 other individuals or joint accountholders who had a financial account and routing number implicated, but whom Fidelity determined were not subject to notification requirements.

4.    Following dissemination and receipt of Fidelity's Notice Letter dated October 9, 2024, four (4) separate actions were filed before this Court bringing various claims against Fidelity for harms arising out of the Data Security Incident. Counsel for the Plaintiffs then coordinated quickly to consolidate these cases and the Court granted consolidation and appointed Interim Class Counsel on December 10, 2024.

5.    On February 10, 2025, the Class Representatives, on behalf of themselves and all others similarly situated, filed a Consolidated Class Action Complaint (the "Action") in the United States District Court for the District of Massachusetts, captioned *In re Fidelity Investments Data Breach Litigation*, Lead Case No. 1:24-cv-12601-LTS.  The Class Representatives asserted claims against Defendants for (i) negligence; (ii) breach of implied contract; (iii) breach of the implied covenant of good faith and fair dealing; (iv) unjust enrichment; (v) violation of the Massachusetts Consumer Protection Act; (vi) violation of the California Consumer Privacy Act; (vii) violation of the California Customer Records Act; (viii) violation of the California Unfair Competition Law; and (ix) violation of New York General Business Law § 349.

6.    Subsequently, on April 11, 2025, Fidelity filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ("Motion to Dismiss"), seeking to dismiss Plaintiffs' claims in their entirety. On June 10, 2025, Plaintiffs filed their Response in Opposition to Defendants' Motion to Dismiss. On July 1, 2025, Fidelity filed its Reply in Support of the Motion to Dismiss.

7.      Shortly after the completion of briefing on the Motion to Dismiss, the Parties began discussing possible settlement negotiations and informal discovery. On August 25, 2025, the Court stayed all litigation proceedings to allow the Parties time to participate in formal mediation. Thereafter, Fidelity provided Plaintiffs with informal discovery and the Parties prepared detailed mediation statements.

8.      On October 23, 2025, counsel for the Parties participated in a full-day mediation session before mediator Hon. Wayne Andersen of JAMS. While the mediation did not result in a resolution, the Parties continued their negotiations in the days thereafter through the assistance of Judge Andersen. Eventually, the Parties reached an agreement in principle. The terms of this agreement are memorialized in the Settlement Agreement, which was negotiated in good-faith and at arms' length by capable and experienced counsel with full knowledge of the law, facts, and the inherent risks of litigation.

9.      The Parties did not discuss Attorneys' Fees and Expense Awards, or Service Awards for the Class Representatives prior to reaching an agreement as to the material terms of the relief for the Settlement Class. Discussion was limited to the creation of a common fund, defined further below as the Settlement Fund.

10.     Plaintiffs believe that the claims asserted in the Action have merit. Plaintiffs and Class Counsel recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Action against Fidelity through motion practice, trial, and potential appeals. They have also taken into account the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation. Class Counsel are experienced in class action litigation and knowledgeable regarding the relevant claims, remedies, and defenses at issue generally in such litigation and in this Action. They have determined that the

Settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

## II.    CLASS COUNSEL'S INVESTIGATION

11.    Class Counsel are confident in the strength of Plaintiffs' case because Class Counsel have been involved in other data breach litigation and have led numerous large data breach cases to favorable resolution.

12.    Class Counsel is experienced in the litigation, certification, trial, and settlement of nationwide class action cases. In negotiating this Settlement, Class Counsel had the benefit of years of experience litigating data breach cases.

13.    Before filing this Action, Class Counsel spent time investigating the claims to gather information about the Data Security Incident. The thorough pre-suit investigation resulted in the preparation of detailed complaints and later the Consolidated Complaint.

14.    In addition, for the initial complaints and the Consolidated Class Action Complaint, Class Counsel gathered Plaintiffs' documents and relevant information.

15.    Leading up to the mediation, Class Counsel requested and reviewed relevant information via informal discovery. This enabled them to prepare for well-informed negotiations overseen by Judge Andersen.

16.    Class Counsel entered the mediation fully informed of the merits of Settlement Class Members' claims and negotiated the proposed Settlement while advancing the position of Plaintiffs and Settlement Class Members and being fully prepared to continue to litigate rather than accept a settlement that was not in the best interests of Plaintiffs and Settlement Class Members.

17.     Judge Andersen actively supervised and participated in the settlement discussions, presiding over arm's-length negotiations between capable and experienced class action counsel on both sides.

18.     The Parties did not discuss attorneys' fees or service awards until after agreeing on the material terms of the Settlement, including the Settlement Class definition, Subclass definition, Settlement Class Benefits, and the Releases.

## III.    THE SETTLEMENT

19.     Class Counsel ultimately participated in mediation and settlement discussions, achieving a favorable Settlement for the Settlement Class, and negotiated a comprehensive Agreement, which includes a robust Notice Program, well-crafted Notices and Claim Form, and a clear Claims Process. *See* Settlement Agreement, attached hereto as, **Exhibit 1**.

20.     The Settlement provides for Defendants' commitment to establish a non-reversionary Settlement Fund of $2,500,000.00, which will pay: (i) Settlement Class Member Benefits; (ii) Costs of Claims Administration; (iii) Service Awards to Class Representatives awarded by the Court; and (iv) any attorneys' fees and costs awarded by the Court to Class Counsel.

21.     Settlement Class Members who submit a Valid Claim will receive: (i) reimbursement of documented monetary losses up to $5,000.00; (ii) two years of credit monitoring services; and (iii) *pro rata* cash payment in the estimated amount of $100.00.[1] In addition, California Subclass Members who submit a Valid Claim may elect to receive an additional $50.00

---

[1] The final amount of the *pro rata* cash payment shall be determined *pro rata* based on the amount remaining in the Settlement Fund following payment of the Attorney's Fees and Expenses Award, Service Awards, Notice and Administrative Expenses, costs of Identity Theft Protection and Credit Monitoring, claims for Documented Monetary Losses, and claims for CCPA Payments.

cash payment for the CCPA claim they have brought as California residents (the "CCPA Payment"). The CCPA Payment may be subject to a *pro rata* decrease if insufficient funds remain following the payment of any Attorneys' Fees and Expenses Award, any Service Awards, Notice and Administrative Expenses, claims for Documented Monetary Losses, and the costs for Identity Theft Protection and Credit Monitoring.

22.    Defendants agreed to comprehensive injunctive relief to improve data security measures following the Data Security Incident. Defendants shall bear all costs of any such security measures, and under no circumstances will such costs be deducted from the Settlement Fund. These steps include the implementation of the following: in instances where potentially unauthorized activity has been detected, conducting a review for potential links between the detected activity and the Data Security Incident, which has continued throughout this litigation and will continue for two years from the date of the Data Security Incident, and requiring multi-factor authentication at login for account holders if not previously enabled.

23.    Class Counsel will seek service awards of up to $2,500.00 for each Plaintiff. The service awards will be paid from the Settlement Fund and will be in addition to the benefits available to Settlement Class Members who submit valid and timely claims forms from the Settlement Fund. The award will compensate the Plaintiffs for their time and effort and for the risks they assumed in prosecuting the Action.

24.    Plaintiffs provided assistance by remaining in contact with Class Counlse, considering and reviewing relevant documents, and following the litigation's progress. These actions ultimately enabled Class Counsel to successfully prosecute the Action and reach the Settlement, including: (i) granting a release of the Released Claims; (ii) publicly serving as named Plaintiffs in the Action which identifies them as victims of a data breach whose Private Information

was exposed; and (iii) having expended resources in prosecuting this Action by providing information and documents to Class Counsel to assist in their investigation of their claims, reviewing and approving their pleadings, considering and accepting the settlement proposal, and regularly communicating and working with Class Counsel. Plaintiffs were prepared to complete their responsibilities, including being deposed and testifying at trial, if needed. Plaintiffs understand and have accepted the obligations of being a Class Representative and have adequately represented the Settlement Class to date and will do so going forward. Plaintiffs' participation is integral to the success in the Action.

26. Class Counsel have not been paid for their extensive efforts or reimbursed for litigation costs and expenses incurred. Class Counsel have undertaken representation at their own expense, with compensation contingent on providing a benefit to Plaintiffs and Settlement Class Members.

26. Defendant has agreed to pay attorneys' fees of up to one third ($833,333.33) of the Settlement Fund, as well as reimbursement of litigation costs incurred in connection with the Action up to $45,000.00. Such award is subject to this Court's approval and will serve to compensate for the time, risk and expense Plaintiffs' counsel incurred pursuing claims for the Settlement Class.

27. Plaintiffs' counsel and Defendants' counsel are all attorneys who are familiar with class action litigation; particularly experienced in the litigation, certification, trial, and settlement of class actions, including data breach cases; and knowledgeable of the legal and factual issues at the center of this Action.

28.     The Settlement was reached in the absence of collusion, and is the product of good-faith, informed, and arm's-length negotiations by competent counsel with the assistance of Judge Andersen at mediation.

29.     Plaintiffs' counsel vigorously represented the Settlement Class and will continue to do so after Preliminary Approval and Final Approval.

### IV.    RISKS OF CONTINUED LITIGATION

30.     Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay.

31.     Class Counsel believe the claims asserted are meritorious and that Plaintiffs would prevail if this matter proceeded to trial.

32.     Class Counsel are pragmatic of the risks and challenges of litigation, including uncertainties in litigating the case through a motion to dismiss, including on the issue of standing, class certification discovery and proceedings, pretrial motion practice, trial, and likely appellate review. There is also the potential substantial costs associated with expert fees. In addition, Class Counsel are aware of the risks inherent from any appeal and subsequent proceedings following a successful trial verdict. Even if Plaintiffs and the Settlement Classes ultimately prevailed at trial, recovery could be delayed for years by an appeal.

33.     Each of these risks, by itself, could have impeded the successful prosecution of these claims at trial and in an eventual appeal—resulting in zero benefit to the Settlement Class. Under the circumstances, Plaintiffs and Class Counsel appropriately determined the Settlement reached outweighs the gamble of continued litigation.

34. The claims and defenses in this Action are complex, as is clear by the record and other similar data breach cases. There is no doubt that continued litigation here would be difficult, expensive, and time consuming.

35. The Settlement provides immediate and substantial benefits to Settlement Class Members. The proposed Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

36. Whether the Action would have been tried as a class action is also relevant in assessing the fairness of the Settlement. As the Court had not yet certified a class at the time the Agreement was executed, it is unclear whether certification would have been granted. This litigation activity would have required the Parties to expend significant resources.

37. In Class Counsel's experience and informed judgment, the Settlement represents an excellent result, in providing substantial monetary and injunctive relief to Settlement Class Members without further delay and considering the challenging and unpredictable path of litigation Plaintiffs would have faced absent a settlement.

## V.   CLASS TREATMENT IS APPROPRIATE

38. For Settlement purposes, the Parties have agreed to certify a Settlement Class defined as: "[a]ll individuals within the United States of America to whom Fidelity provides notice of the Data Security Incident under relevant state law before the Notice Deadline associated with this Settlement," as well as other individuals or joint accountholders (*i.e.*, instances where a single financial account and routing number are associated with two people) whose financial account and routing number were exposed in the Data Security Incident. It is intended that these approximately 86,000 individuals or joint accountholders shall also be included as Class Members. The Parties

have also agreed to certify a California Sub-Class comprised of Settlement Class Members within California.

39.     The numerosity requirement of Federal Rule of Civil Procedure 23(a)(1) is satisfied because the Settlement Class has approximately 155,000 individuals, and joinder of all is impracticable. The Settlement Class Members are ascertainable from Defendants' records and the notice letters sent out following the Data Security Incident.

40.     Either common legal questions or common fact questions are sufficient to establish commonality, and both are present here. Plaintiffs asserted multiple questions of law and fact—centering on whether Defendants utilized unreasonably lax data security practices which led to the Data Security Incident—that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same or similar way, and that would generate common answers.

41.     Plaintiffs' claims are typical. For example, Settlement Class Members are at the same imminent risk of identity theft due to exposure of their Private Information, most notably their Social Security numbers. Moreover, common questions of fact predominate because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each Settlement Class Member.

42.     Resolution of hundreds of thousands of claims in one action is far superior to individual lawsuits because it promotes consistency and efficiency of adjudication.

43.     Plaintiffs are adequate Class Representatives. They are fully committed to the responsibility of serving as Class Representatives. Their claims are not antagonistic to or in conflict with the interests of the Settlement Class. They pursue the same legal theories challenging the same course of Defendants' conduct. Plaintiffs and the absent Settlement Class Members seek

remedies equally applicable and beneficial to their fellow Settlement Class Members. They have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests.

44.     As noted above, Class Counsel have significant experience in the litigation, and settlement of national class actions, including extensive experience litigating data breach cases many of which have obtained final approval. *See* Firm Resumes of Class Counsel, attached hereto as **Exhibits 2**. Thus, Plaintiffs and the Settlement Class are represented by qualified and competent Class Counsel. Each of us is a leader in the class action field and each has extensive experience prosecuting class actions which has helped us in this Action.

45.     Class Counsel are qualified and competent, possess extensive knowledge of the applicable laws, and experience in prosecuting complex class actions in courts throughout the United States, including cases similar to this one, and have recovered millions of dollars for the classes they represented. The experience, resources, and knowledge Class Counsel brings to this Action is extensive and formidable. Class Counsel has devoted substantial time and resources to this Action, is qualified to represent the Settlement Class, and will, along with the Class Representatives, vigorously protect the interest of the Settlement Class.

## VI.     SETTLEMENT ADMINISTRATOR AND NOTICE PROGRAM

46.     The proposed Settlement Administrator is Simpluris, Inc., a well-respected and reputable third-party administrator with extensive experience in data breach cases, which will oversee the Notice Program. The Notice Program is designed to provide the best notice practicable and is tailored to inform Settlement Class Members about the Settlement benefits.

47.     The Notice Program constitutes sufficient notice to all persons entitled to notice. The Notice Program satisfies all applicable requirements of law and due process.

48.    The Notice will properly inform Settlement Class Members of the Settlement's substantive terms. It will advise Settlement Class members of their options for remaining part of the Settlement Class or for opting out of the Settlement; for submitting Claim Forms; for objecting to the Settlement and/or the Application for Attorneys' Fees, Costs, and Service Awards; and how to obtain additional information about the Settlement. The Notice Program is designed to directly reach a very high percentage of Settlement Class members with Email Notice and Postcard Notice, with consideration that Settlement Class Members' contact information is readily available to Defendants. It exceeds the requirements of constitutional due process.

I declare under penalty of perjury under the laws of the State of Massachusetts that the foregoing is true and correct.

Executed March 10, 2026, at Oklahoma City, Oklahoma.

*/s/ A. Brooke Murphy*
A. BROOKE MURPHY

I declare under penalty of perjury under the laws of the State of Massachusetts that the foregoing is true and correct.

Executed March 10, 2026, at New York, New York.

*/s/ Lori G. Feldman*
Lori G. Feldman

12